The next case today is John L. Bryant v. American Airlines, Inc. et al. Appeal No. 20-1690. Attorney Schultz, please introduce yourself on the record. Stephen Schultz for Appellant Plaintiff John Bryant. Your Honor, may I reserve two minutes for rebuttal, please? Yes, you may. Thank you very much. I'd like to begin by discussing an issue of law that I want to make sure doesn't get lost because of lengthier discussions of law of other issues that were in the briefs. In particular, the parties have disagreed as to what extent NLR cases are relevant to determining and defining the duty of fair representation of RLA cases, such as this one. In general, the plaintiff has taken the position that the NRLRA and the RLA are basically, on most parts, similar and that, therefore, the NRLRA precedents are useful and should be taken into account for the RLA cases. However, there is one area where we believe there's a difference that's been recognized by both parties, plaintiffs and defendants, in the briefs in this case, and that is that under the NRLRA, employers and the unions may establish their own procedures for handling grievances. On the other hand, under the RLA, it has been ruled that individuals must be allowed to participate in each stage of the proceeding, including settlements. Now, in particular, the one case that I want to make sure doesn't get lost in the long list of cases that we put in front of you is a case in which Judge Voorhees was a judge from the Western District entitled Stevens v. Teamsters 2707. In that case, what Judge Voorhees did was he declared that in an RLA case, an agreement must be given the opportunity to take over a case if the union decides that it is going to withdraw or drop the case, an opportunity that was not afforded to the appellant in this case. In particular, what he does in that case, why I call this case in particular to your attention so it doesn't get lost, is he runs through the various sections of the RLA as to how they're different and what's relevant. He runs through the Supreme Court history of interpreting the law so that it rejected the ability to enter global type settlements, such are in this case, at the expense of an individual grievant. In that case, he comes to the conclusion that the individual grievant must have been, should have been, there were three of them in that case, given the opportunity to take over the case. I want to make sure I call that case to your attention and it doesn't get lost. Let me move to the statute of limitations, which obviously is discussed at length in the briefs and in the lower court's opinion. I'm not going to tell you that I fell off my seat when the defense raises a statute of limitations claim to our bringing in court a case where the grievance was 17 years old. But the fact is, while it may be tempting to simply state that you can't bring in court a case involving a grievance of 17 years old, it's simply not that simple. The lower court, largely relying on the fact that my client admittedly threatened to bring litigation on a number of occasions, states that in the lower court's opinion, my client knew or should have known that the union was not acting on his case. But the problem with that analysis is that's not the claim. Four minutes remaining. We're not claiming that the duty of fair representation was violated because there was inaction or that it took too long for action. We're claiming that the action that was taken in October of 2017 with only a perfunctory investigation and without any deliberation in that particular case, that that violated the duty of fair representation. And we think that it's significant that when you look at the lower court's opinion, it doesn't discuss the fact that in April of 2016, the union, the APA, told Mr. Bryan that his case was still open. It doesn't discuss the fact that in May, it told him that in June of that, June 15th of that year, they'd be meeting with American Airlines to discuss his case. And in fact, Buntin was very careful and knowledgeable about the statute of limitations. He brought this action on December 14 of 2017, which is exactly one day short of the six months from the June 15th date he was told about. He was being conservative as to when he brought this action because the basis of this action is not to do with inaction, but to the action that was taken and that the specific warnings he was given in 2017 that the statute should run from October. But even in the be conservative in any event, it doesn't run from June 15, 2017. And therefore he brought it within 15 months. Let me move quickly to the. I had thought you were bringing both an inaction claim and a action claim. Is that wrong? That that is the complaint. One is it was initially drafted, had alternatives in it, not really knowing what all the facts were going to be. The arguments based at summary judgment stage was simply based on the action, not on the inaction. Moving quickly to the merits of the case. And again, the main issue below and ISIS in this is to what extent is. I'm sorry. I understood the case the same way Judge Barron did, and I don't understand your answer. I thought the case was about your client's initial grievance that the union president put the kibosh on his getting the training he needed to be able to fly because the union says he was going to retire shortly. So it didn't or the company didn't make sense. I thought that was what this case was about. You are now saying, no, it's not about that. It's about the failure to permit him to participate in the global negotiations with American Airlines. If I understood your argument, is that correct? No, your honor. So what's it about? It's about both of those because you can buy it. If it's about both of those, you gave an incorrect answer to the prior question. I hope not. I certainly wasn't trying to, your honor. Let me try. Let me try and clarify it. You tell me where I've gone wrong. I thought one species of claim you were bringing to us was an inaction claim because they never entertained the grievance. I thought a separate species of the claim was that they then did entertain it and did it in a perfunctory manner. The second would be an action claim. The first would be an inaction claim. Is that right? That is right. You just said to me, you're not bringing an inaction claim at all. So that would suggest the whole issue of they ever entertained the grievance, that issue you've abandoned. Then all that's left is at the moment they did entertain it, did they do it in two perfunctory manner? Is that all that we have before us on appeal then? Well, there are two issues. There are three issues. One, did they do it in two perfunctory manner? Two, did they do it without careful deliberation, which has been found to be arbitrary? Three, did they do it in violation of the RLA, which requires them a right to... All of those suggest that the question of whether they just waited too long to take it up is no longer before us. That is correct. I'm not bringing that and did not raise that blow on summary judgment either. Should I wait for a rebuttal? Okay. You addressed the statute of the American Airlines defense that if you lose against the union, you automatically lose against the airline. Secondly, the airline certainly, there's no evidence of bad faith in their entering this global settlement agreement or discriminatory action or anything improper. What do you have to say? Two sentences. I agree with American on the issue of if I lose against the union, there's no case against them. On the issue of whether or not I can bring a hybrid action against them, bad faith should not be necessary. We should simply... That hybrid actions have been found in the second circuit, and I believe it's the better ruling of law that hybrid action should be allowed where an employee should not be allowed off simply because a union is found to have breach of duty for representation. Okay. Thank you. We'll hear from your opponent. Attorney Schultz, if you could please mute your audio and video at this time. And Attorney Robertson, if you could please introduce yourself to the court, you have four minutes. May it please the court. Mark Robertson on behalf of American Airlines. As your honors just heard, if this court affirms the district court's decision granting summary judgment to APA, there's no need to address any of the issues presented on appeal as to American. If however, this court were to reverse as to APA, it should affirm the lower court's decision as to American based on either of the two alternative grounds held by the district court. First, the district court correctly concluded that it does not have jurisdiction over appellate's claim against American. What the district court held is that for a court to exercise jurisdiction over an RLA employer based on a hybrid claim, there must be quote, well-pled allegations of something like collusion between the employer and the union, which appellate concedes does not exist here. In support of its holding, the district court cited to the Supreme Court's decision in Glover v. St. Louis San Francisco Railway Company, which explains why allegations of collusion are required under the RLA. In Glover, plaintiffs alleged that their union was acting in concert with their employer to set up quote, schemes and contrivances to bar African Americans from promotion solely because of their race, and that the employer and union were working quote, hand in glove in that regard. And what the Supreme Court held is that first of all, they stated that the starting point, which is courts lack jurisdiction over breach of CBA claims brought by employees against RLA employers. But then they said based on the allegations in Glover, that the union and the employer were working quote, hand in glove. The dispute in Glover was actually one between employees on one side and the union and the employer together on the other. And your honors, the Eighth Circuit's decision in Rouse v. Brotherhood Railway Carman, also cited by the district court, is perhaps one of the most thoughtful decisions addressing the issue, and it analyzed Glover in some detail. And what the Eighth Circuit concluded is that based on Glover, the most critical factor is whether the lawsuit is essentially between employees on the one hand and union and the management together on the other. In other words, as the Eighth Circuit went on to clarify, the question is whether there are well-pled allegations of something like collusion, exactly as the district court held here. And your honors, and this is the kind of final link in the chain, is this court's decision in Stanton v. Delta Airlines, which follows the same reasoning. In Stanton, this court analyzed the same question of whether subject matter jurisdiction existed over a claim against an employer for allegedly breaching a CBA. And as in Glover, this court focused on whether the union and the employer were together involved in creating the employee's grievance. And what this court held is that unlike in Glover, the union and employer in Stanton were not involved together in the creation of the employee's basic grievance, citing Glover and the Rouse decision for its conclusion, sending it to the system board. And so what you really have is this very straight line from Glover to Rouse to Stanton, all holding that you must have the union and employer acting together. In other words, collusion for the court to exercise jurisdiction over a hybrid claim against an RLA employer. And in addition to those three decisions, your honors, the 4th, 6th, 9th, and 10th circuits have all either specifically held the same thing that allegations of collusion are required, or at a minimum made statements supporting that collusion is required. And the only circuit court decision holding otherwise is the 2nd Circuit's decision in Shum v. South to conduct the required analysis set forth in Glover that the 1st Circuit has previously followed. And it also relied on cases arising under the LMRA, which is what plaintiff does here as well. But as the district court expressly held, employees and employers covered by the RLA are expressly exempted from the LMRA. And there's some fundamental differences that I could go into if you'd like. Thank you. It's in your brief. All right. We'll hear from a counsel for the union now. Thank you, Mr. Robertson. If you could please mute your audio and your video. And Mr. Clark, if you could please introduce yourself for the record. Good afternoon, your honors. James Clark for the Allied Pilots Association. I would like to just, I guess, start off where Mr. Schultz started off with respect to his assertion that under the RLA, there is an individual right to take a case to arbitration. That is not the case. Section 204 of the RLA, the language of American Airlines, 390F3-601, has expressly held that an individual airline employee does not have an individual right to pursue arbitration under the RLA. The Supreme Court has made it clear in multiple cases, VACA and otherwise, that there is no absolute right to take a case to arbitration. And in this case, the plaintiff had no absolute right to take the case to arbitration. With respect to the statute of limitations issue, the district court found, now we're taking the inaction piece off the table, the events that took place with respect to the six-month statute of limitation period going back to June of 2017, which would be the six months prior to when the complaint was filed. During that period of time, APA did nothing to provide the plaintiff with any belief that it was taking his case to a hearing. He admits that, that APA never gave him any indication that it was arbitration. There is nothing in the record to support that APA was pursuing the case to arbitration. It's clear that the plaintiff knew that APA had been the bargaining representative for the new American Airlines pilots since 2014. He never even reached out to anybody about his until 2017. And at that point, all he was told was it was open and there was going to be a meeting with the company. There was never any reference to any effort to actually bring his case to arbitration. I would pivot then just to the merits of the duty of fair representation claim. Here, the claim is exclusively that the union's actions were arbitrary. The standard, as this court has held in Leighton and many other cases, is, quote, a pretty high standard. In order to find that the union's actions here created a breach of a duty of fair representation in that they were arbitrary, the court would have to find that the union's actions were outside of a wide range of reasonableness such that they were irrational. And in doing so, the court also has to be highly deferential. The case law in the Supreme Court and this court is clear that this is a highly deferential standard in reviewing the actions of the union. Here, it is clear with respect to APA, as your honors well know, APA was the third union in line here. The plaintiff was not a member of APA. This was filed 15 years before APA was in any way responsible for representing pilots who formerly worked for US Airways. APA inherited the grievance. It was provided documentation indicating that the grievance had already been withdrawn by the prior union. It conducted a review and it included the grievance as part of the global settlement agreement with American Airlines on the list of claims that had been withdrawn already or were to be withdrawn. It's clear that the actions, even if you say the claim was timely, the actions that APA took meet the standard of being with a rational basis and certainly within the wide range of reasonableness based on the facts presented here. So plaintiff, even if he can overcome the statute of limitations issue, the facts and the law support the district court's finding that there was no breach of a duty of fair representation to the plaintiff by the Allied Pilots Association. Thank you. Thank you, your honors. Thank you, Mr. Clark. You can mute your audio and video at this time. And Attorney Schultz, you have two minute rebuttal. Thank you. Quickly regarding the merits, the points I want to emphasize are the following. One, the lower court did not view the most favorable to the plaintiff, which would have been the standard for the summary judgment. And in particular, she comes to the conclusion that the union relied on the USAPA experts. But what she does not even discuss, although it was before her, was the fact that the USAPA experts themselves, two of the three of them said they did not consider themselves experts regarding this grievance, which is why they talked to who they considered the ALPA expert, Douglas Mowry, whom they testified, said, told them that in his opinion, there was no merit to John Bryan's claim. But Douglas Mowry, in his deposition, said he never told anybody that he felt there was no merit, never reached that conclusion, and he never passed it on. If you then look, so looking at the facts, you can't accept that there were experts here because the USAPA experts themselves said they didn't consider them experts, relied on somebody else, and the person they said they relied on said he never said what they said. A second thing that I want to put an emphasis on is the other side has argued that, well, it really doesn't make any difference that John Bryan was a former union president. I'd argue that's simply not the case, that it does make a difference, that what is an acceptable minimal investigation in a case involving loss of one sick day leave is a lot different on what is an acceptable minimum investigation of a claim brought by a former union president who claims that the president of the airline personally canceled his training, which resulted in his loss of a career as a pilot and a loss of millions of dollars, that the cases have to be fact-specific. It's quite relevant as to the facts that were not discovered, which goes to the third deliberation. There has to be, this is supposed to be a careful deliberation, but the person put in charge of the deliberation said she did not do her own deliberation, said she did not ask any questions of the USAPA experts. Thank you. Thank you. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court, God Save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.